**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| SHAWN A. RUSSELL, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 04-855 KAJ |
| | ) | |
| v. | ) | |
| | ) | TRIAL BY JURY OF |
| INLAND PAPERBOARD | ) | TWELVE DEMANDED |
| AND PACKAGING, INC., | ) | |
| | ) | |
| Defendant. | ) | |

# AMENDED COMPLAINT

## JURY DEMAND

Plaintiff hereby requests trial by jury of twelve on all claims asserted herein.

## STATEMENT OF CLAIM

Plaintiff, SHAWN A. RUSSELL, by and through undersigned counsel, Schwartz & Schwartz, Attorneys at Law, P.A., hereby complains against the Defendant, INLAND PAPERBOARD AND PACKAGING, INC., as follows:

1. This is an action based in part upon violations of the Plaintiff's civil rights, to redress the unlawful and discriminatory conduct and employment practices of the Defendant.

## PARTIES

2. Plaintiff, SHAWN A. RUSSELL, hereinafter “Mr. Russell”, is an African-American male individual and a citizen of the United States of America, who resides at 1189 Madison Court, City of Dover, County of Kent, and State of Delaware. At all times relevant hereto, Mr. Russell was an employee of the Defendant, INLAND PAPERBOARD AND PACKAGING, INC., hereinafter “Inland”.

3. Inland is a corporation organized and existing under the laws of the State of Delaware;

4. At all times relevant hereto, Inland regularly conducted business at Harrington, Delaware.

5. At all times relevant hereto, Inland employed four or more persons within the State of Delaware, and was an "employer" within the meaning of Title 19 Del.C. Section 710; and Inland further employed fifteen or more employees and was an "employer" within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sections 2000e, et seq.

JURISDICTION AND VENUE

6. The jurisdiction of this Court is predicated upon Title 28 U.S.C. section 1331 as well as 42 U.S.C. section 2000e-5.(f)(3), to redress the unlawful deprivation of Plaintiff's rights secured, guaranteed and protected by federal law. The Court also has jurisdiction pursuant to 28 U.S.C. sections 2201 and 2202 relating to declaratory judgments. This Court may also exercise supplemental jurisdiction pursuant to 28 U.S.C. section 1367 over Plaintiff's state law claims arising under the common law and statutes of the State of Delaware, and which are so related to Plaintiff's federal question claims as to form part of the same case or controversy.

7. Venue is proper in the United States District Court for the District of Delaware pursuant to 28 U.S.C. section 1391(b), as Delaware is the place where Plaintiff resides, where Defendant regularly conducts business, and where all the wrongful conduct occurred.

ADMINISTRATIVE PREREQUISITES

8. Plaintiff has complied with all the administrative prerequisites to filing an

action under Section 706 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sections 2000e-5, and Title 19 of the Delaware Code, Subchapter II. Discrimination in Employment, as follows:

A. Plaintiff timely filed a formal charge of discrimination with the State of Delaware Department of Labor and/or the Equal Employment Opportunity Commission (hereinafter "the Commission");

B. Plaintiff promptly and diligently accommodated all Commission requests for information and fully cooperated in the agencies' investigation of this matter;

C. The Commission determined that it would not pursue the matter, and terminated processing of the charges;

D. Plaintiff formally requested a Notice of Right to Sue from the Commission, which was issued on May 28, 2004;

E. The instant proceedings were commenced on July 13, 2004.

9. There exist no administrative prerequisites to filing an action under the Civil Rights Act of 1866, as amended by the Civil Rights Restoration Act of 1991, 42 U.S.C. Section 1981.

COUNT I. HARRASSMENT

10. On or about September 14, 1993, Mr. Russell began his employment at Defendant Inland's Harrington, Delaware paperboard manufacturing facility.

11. On or about April 1, 2003, Inland wrongfully terminated Mr. Russell's employment.

12. At all times during his employment at Inland, Mr. Russell was forced to suffer a continuous course of racially motivated harassment. Such harassment included but was not limited to:

A. Mr. Russell on numerous occasions heard statements made by fellow white employees, referring to black employees as “niggers”, the import of which statements was that black employees should leave Inland because Inland would be a better place without black employees;

B. Mr. Russell on numerous occasions saw statements written in common areas at the Harrington facility, referring to black employees as “niggers”, the import of which statements was that black employees should leave Inland because Inland would be a better place without black employees;

C. Mr. Russell on numerous occasions observed black dolls hanging by their necks in employee common areas;

D. Mr. Russell on numerous occasions observed a white fellow employee display a permanent tattoo on his forearm, which was purportedly in the likeness of the Imperial Wizard of the Ku Klux Klan;

E. Mr. Russell on numerous occasions observed fellow white employees draw or display drawings of monkeys, which they stated were pictures of a fellow black employee named Marty Johnson;

F. Mr. Russell was one of few black employees in a predominately white work force; and such imbalance along racial lines at Inland’s Harrington facility was caused by Inland’s failure to hire and promote black employees and Inland’s failure to correct the racially charged atmosphere that existed at that facility.

G. Mr. Russell was told by a human relations manager employed by Inland that she was directed to put a dot on certain applications to signify that the applicant was black, and so that Inland would know not to hire those applicants;

H. Mr. Russell on numerous occasions observed Inland supervisors and

managers treat white employees in a manner that was preferential as compared to treatment given to black employees;

I. Mr. Russell and his fellow black employees were ordered to perform menial and humiliating tasks that similarly-situated white employees were not forced to perform, such as cleaning bathrooms and cleaning the paper dust off the walls;

J. Mr. Russell was required to perform all the tasks for an entire box stripping crew, as described in Inland's IQP 9000 Stripping Procedure specification sheet, then disciplined when he did not perform as well as full crews;

K. Mr. Russell on one occasion was threatened by a supervisor, who threw protective goggles at him, then ordered him to go outside so that he could kill him;

L. Mr. Russell was placed on "indefinite probation" by Inland;

M. Mr. Russell was forced to work in an environment where black employees were not permitted to take vacations, were not paid overtime pay, and were not permitted to take days off or alternately were permitted to take days off but then reprimanded for taking them;

N. Mr. Russell was not permitted to make telephone calls at a payphone provided by Inland for employee use; alternately, when he made telephone calls from the Inland office phone, a supervisor monitored his conversations from another telephone connected to the same line.

O. Mr. Russell suffered other instances of racially motivated harassment, as shall be made known during the discovery process;

13. Inland knew or should have known about such continuing course of racially motivated harassment, and failed or refused to take appropriate action to correct it.

COUNT II. BREACH OF CONTRACT

14. Plaintiff restates and incorporates the foregoing paragraphs, numbered 1. through 13., and further pleads:

15. At all times relevant hereto, Mr. Russell's relationship with Inland was governed by the INLAND PAPERBOARD AND PACKAGING, INC., CONSUMER PACKAGING GROUP, HARRINGTON DELAWARE, EMPLOYEE HANDBOOK, as revised April 1, 2001.

16. Inland promulgated its Employee Handbook in such a manner as to manifest its willingness to enter into a bargain with its employees, including Mr. Russell.

17. Mr. Russell assented to Inland's offer regarding the employment policies and procedures by accepting employment.

18. Mr. Russell's initial and/or continued employment with Inland constituted acceptance of and consideration for Inland's offer.

19. The official Inland Handbook prohibited racial harassment; yet Inland knowingly permitted racial harassment to exist and flourish in its Harrington facility.

20. The official Inland Handbook stated that Inland would provide appropriate training to Inland employees to prevent harassment; yet Inland failed or refused to provide appropriate training.

21. The official Inland policy concerning harassment stated that Inland would take action against employees found to be in violation of Inland's policy concerning harassment; yet Inland failed or refused to investigate and take corrective action with regard to the harassment suffered by Mr. Russell.

22. Accordingly, Inland breached the terms of its agreement with Mr. Russell.

COUNT III. RETALIATION

23. Plaintiff restates and incorporates the foregoing paragraphs, numbered 1.

through 22., and further pleads:

24. Mr. Russell, prior to July of 2001, complained on numerous occasions to his supervisors and human relations managers at Inland's Harrington facility about Inland's racially charged atmosphere and discriminatory employment practices.

25. After receiving no response, Mr. Russell called Inland's toll free long distance number to make complaints directly to corporate headquarters, as such procedure is prescribed in his employee handbook.

26. Inland failed to take any corrective action in response to Mr. Russell's repeated internal complaints.

27. On or about July 1, 2001, Mr. Russell made the first of four formal complaints charging racial discrimination with the State of Delaware, Department of Labor.

28. Mr. Russell's purpose in filing that complaint was to shed light on the discriminatory practices and environment maintained at Inland's Harrington facility, and to reform the same.

29. On May 31, 2002, and in response to the aforementioned complaint, the Department of Labor, Office of Labor Law Enforcement, determined that Inland discriminated against Mr. Russell on the basis of his race.

30. Mr. Russell's complaints did not result in the reform that Mr. Russell desired. Rather, Mr. Russell's complaints resulted in adverse employment action by Inland and against Mr. Russell, including but not limited to the following:

A. Inland hired a supervisor whose stated object was to see that Inland "got rid of" Mr. Russell.

B. Inland manufactured circumstances in order to create pretexts under which Mr. Russell would be subjected to adverse employment action. Such action

included but was not limited to the following:

i. Mr. Russell was given permission to take a day off on Martin Luther King Day in 2003. When Mr. Russell returned to work at Inland the day following, he was called into the office and issued a verbal warning for failing to appear for work the previous day. Mr. Russell insisted that there were witnesses that could corroborate the fact that he was given permission to take the day off, but Inland refused to discuss the matter with them.

ii. After Mr. Russell was assaulted by his supervisor, he was ordered to receive counseling from a psychologist named Martha Jane Merrion, Ph.D. Dr. Merrion placed a restriction with an indefinite term upon Mr. Russell's employment by ordering him not to work overtime or on weekends. Mr. Russell gave a copy of the orders to the human resources department at Inland. After some time had passed, and without having sent Mr. Russell back to Dr. Merrion to learn whether the restriction should be withdrawn, Inland told Mr. Russell that he had missed work on a number of Saturdays when he should have been at work, and that he was being placed on probation permanently.

iii. Mr. Russell was required to perform all the tasks for an entire box stripping crew, as described in Inland's IQP 9000 Stripping Procedure specification sheet, then disciplined when he did not perform as well as full crews.

iv. Mr. Russell was injured while at work. He received medical treatment for his injuries. He returned to work as soon as he felt capable of doing so. At that time, he was taking a muscle relaxer pursuant to his physician's direction. Inland's human resources department instructed Mr. Russell that he could not return to work while he was taking medication, and sent him home with instructions to return when he

was no longer taking medication. He subsequently was fired for being absent from work.

C. Mr. Russell was not permitted to make telephone calls at a payphone provided by Inland for employee use; alternately, when he made telephone calls from the Inland office phone, a supervisor monitored his conversations from another telephone connected to the same line.

31. At all relevant times, Mr. Russell performed his job duties in a satisfactory manner.

32. The foregoing conduct constituted unlawful retaliation in contravention of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sections 2000e-5, et seq., the Civil Rights Act of 1866, as amended by the Civil Rights Restoration Act of 1991, 42 U.S.C. Section 1981, and Delaware law.

COUNT IV. FAILURE TO PROMOTE

33. Plaintiff restates and incorporates the foregoing paragraphs, numbered 1. through 32., and further pleads:

34. Inland failed or refused to promote Mr. Russell, and failed or refused to grant to him appropriate pay raises that would have been commensurate with his experience and job performance.

35. Inland did not fail or refuse to promote or grant such pay raises to Mr. Russell's white fellow employees; rather, white employees were hired, trained by Mr. Russell, and then promoted over Mr. Russell.

36. Inland's failure to promote and grant appropriate pay raises to Mr. Russell was the result of racial animus.

37. Such conduct constituted unlawful discrimination in contravention of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sections 2000e-5, et seq., the

Civil Rights Act of 1866, as amended by the Civil Rights Restoration Act of 1991, 42 U.S.C. Section 1981, and Delaware law.

COUNT V. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

38. Plaintiff restates and incorporates the foregoing paragraphs, numbered 1. through 37., and further pleads:

39. Inland engaged in extreme and outrageous conduct as set forth in the foregoing paragraphs and as shall further be disclosed through the discovery process.

40. Inland recklessly and/or intentionally caused Mr. Russell to suffer from severe emotional distress.

41. Upon information and belief, Mr. Russell suffered and continues to suffer anxiety and panic attacks and emotional and bodily pain.

PRAYER FOR RELIEF

42. The conduct of the above-named Defendants, as set forth herein, in violating Mr. Russell's rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section(s) 2000e et seq.; the Civil Rights Act of 1866, as amended by the Civil Rights Restoration Act of 1991,42 U.S.C. Section 1981; and the laws of the State of Delaware, caused injuries, damages and harm to Mr. Russell, including, but not limited to, past and future economic loss, past and future non-economic losses, including extreme emotional distress, loss of reputation, shame, humiliation, pain and suffering, inconvenience, mental anguish, impairment in the quality of life; and consequential losses.

**WHEREFORE**, Plaintiff requests judgment and damages against Defendant as follows:

A. Plaintiff requests that the Court enter a declaratory judgment that Defendants have violated Mr. Russell's right to be free from discrimination in the workplace;

B. Plaintiff requests that the Court enter an injunction ordering Defendant to make Plaintiff whole with full back pay, benefits and reinstatement to a position Mr. Russell would have obtained in the absence of discrimination or, in the alternative, front pay;

C. Plaintiff demands an award of compensatory damages in an amount to be shown at trial for past and future economic and non-economic losses, including extreme emotional distress and mental anguish, impairment of the quality of life, and consequential losses;

D. Plaintiff demands an award in favor of Plaintiff and against Defendant for exemplary and/or punitive damages in an amount to be shown at trial;

E. Plaintiff demands an award of damages in favor of Plaintiff and against Defendant for reasonable attorneys' fees and costs, including but not limited to expert witness fees;

F. Plaintiff demands an award in favor of Plaintiff and against Defendant of interest on any awards at the highest rate allowed by law; and

G. Plaintiff prays that this Court will enter such other and further relief as it deems just and appropriate.

Respectfully submitted this _14th_ day of April, 2005,

SCHWARTZ & SCHWARTZ

By: /s/ Benjamin A. Schwartz_____

BENJAMIN A. SCHWARTZ
Delaware Bar ID No. 4145
1140 South State Street
Dover, Delaware 19901
(302) 678-8700
Attorney for the Plaintiff